UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASMINE ZAMORA and JOSHUA
ZAMORA, by and through their Next Friend,
LOTOYA ZAMORA,

       Plaintiffs,

v.

DETROIT PUBLIC SCHOOLS and JANE
DOE HOWARD, in her individual and
official capacities,

       Defendants.
_____/

Case No. 11-12077

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter comes before the Court on Defendants Detroit Public Schools and Jane Doe Howard (Sarah Howard)'s motion for summary judgment. This case arises out of an incident where Defendant Howard allegedly assaulted minor students, Plaintiffs Jasmine and Joshua Zamora, while they were riding home from school on the school bus. For the reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part.

**I.    Facts**

On January 31, 2008, Plaintiffs Jasmine Zamora ("Jasmine") and Joshua Zamora ("Joshua") were riding home from school on a school bus. They were sitting next to each

other, three seats from the back of the bus.[1] (Jasmine Zamora Dep. 10:9-17, March 7, 2012.) Jasmine was sitting by the window and Joshua was sitting by the aisle. (*Id.* at 9:1-15.) Jasmine and Joshua were sitting down, but the other kids on the bus were acting badly, standing up, and throwing paper, broken pencils, and other things. (*Id.* at 7:10-19, 8:14-16.) Jasmine and Joshua were not throwing things. (*Id.* at 8:17-25.)

Defendant Howard was the bus attendant on the bus that Plaintiffs were riding. (Sarah Howard Dep. 13:21-24, March 7, 2012.) The bus had two adults on it: Defendant Howard and the bus driver. (Jasmine Dep. 12:22-13:1.) The kids on the bus were standing up and throwing paper planes and broken pencils at Defendant Howard while the bus was moving. (*Id.* at 18:11-25.) Defendant Howard told the kids to stop and sit down, but the kids were not listening to her. (*Id.* at 19:1-16.)

Defendant Howard got mad because the kids wouldn't listen to her and she came to the back of the bus and starting hitting kids and Jasmine and Joshua "got caught up in the middle of it and she started hitting [them]." (*Id.* at 20:12-15.) Defendant Howard scratched Jasmine's arm and punched her once in the back and she also punched Joshua in the back and kicked him in the knee. (*Id.* at 22:8-10, 49:22-50:2.) Jasmine stated that she has scars on both her arms from where Defendant Howard scratched her. (*Id.* at 24:5-28:8.) Jasmine also stated that she had back aches from Defendant Howard punching her in the back for two weeks after the incident. (*Id.* at 28:11-15.)

---

[1] This statement of facts reflects those facts in the light most favorable to Plaintiffs. Defendant Howard's version of the facts is vastly different from Plaintiffs' version, from disputing where Plaintiffs were sitting to its denial that any physical altercation occurred.

Joshua testified that Defendant Howard punched him in the back six or seven times, scratched the top of his right arm, and kicked him in the left kneecap. (Joshua Zamora Dep. 12:24-17:16, March 7, 2012.) Joshua stated that he still has scars on his right arm and knee cap from Defendant Howard scratching and kicking him. (*Id.*) Joshua states that his knee still feels sore when he runs around for a while and he occasionally has back pain that makes him have to go lay down. (*Id.* at 31:14-32:15.)

Plaintiffs were crying when they got off the bus and told their mom, Diamond Martinez, that Defendant Howard had beat them up on the bus. (Jasmine Dep. at 42:5-6, 44:16-19; Diamond Martinez Dep. 19:7-9, March 7, 2012.) Martinez then got in her car and followed the bus, wanting to address Defendant Howard about why she hit Plaintiffs. (Martinez Dep. 19:11-16.)  Martinez testified that Defendant Howard responded aggressively, yelling and swearing at Martinez. (*Id.* at 19:22-20:7.) Martinez then called 411 to find the bus contractor and drove to the terminal to talk to a supervisor, Ms. Coleman. (*Id.* at 20:7-15.) The supervisor asked Martinez what happened, helped Martinez write out a statement, told Martinez that she was investigating the situation because a lot of people were upset about the incident, and told Martinez not to worry because Defendant would not be on anymore buses. (*Id.* at 20:14-21:3.) Coleman then told Martinez to go home and take her children to the hospital. (*Id.* at 21:3-5.)

When Martinez got home, she took Jasmine and Joshua to the hospital. (Joshua Dep. 27:16-18.) The Emergency Treatment notes indicate that Jasmine had "acute contusions and abrasions, right forearm secondary to assault." (Pls. Resp. Ex. D.) The hospital put Jasmine's arms under the sink, washed the abrasions off with soap and warm water, and applied bacitracin. (*Id.*) The medical record notes indicate "overall atraumatic

3

save for some very superficial abrasions" on her right forearm that are "not through the dermis." (*Id.*) Joshua's medical reports indicate that he told the doctors he was thrown onto his back and had pain across his mid-thoracic area. (Defs. Mot. Ex. 5.) He had x-rays done and they came back negative. (*Id.*) The report indicates that he had "no other symptomatology or complaints at this time." (*Id.*) There is nothing about any scratches on his arm or injury to his knee.

After going to the hospital, Martinez went to the police station to file a report. (Pls. Resp. Ex. E.) Martinez states that she tried to press charges but:

> [T]he school board like hid her, they wouldn't never tell me her name so I tried getting her name and they just put down John Doe, Jane Doe, or something like that. But I did do like where you supposed to do is make a police report but every time I called the school they wouldn't – like, okay, call downtown and speak to the superintendent. I called Ms. Coleman, she said I'm still doing my investigation, I'll get back with you and nobody got back with me.

(Martinez Dep. 56:4-13.) Martinez states that after their initial conversation, Ms. Coleman never contacted her again. (*Id.* at 63:11-15.) No one from Detroit Public Schools contacted Martinez and when she tried calling, the secretary would say they are not in and they started avoiding her calls. (*Id.* at 63:16-20.)

Defendant Howard testified that prior to her deposition, she never discussed this incident or had an interview with anyone other than her attorneys.[2] (Howard Dep. 6:13-7:11.) Defendant Howard stated that Detroit Public Schools had training on how to deal

---

[2] This appears to be incorrect because Plaintiffs' counsel presented Defendant Howard with an exhibit that was someone's handwritten notes of an interview with Defendant Howard. (See Howard Dep. 52:7-55:25.) It is unclear who Defendant Howard talked to or who investigated because neither party attached the complete deposition to their motions.

4

with students once a year. (*Id.* at 7:21:25.) She had specialized training once a year with respect to being a bus attendant that showed her how to seat the children and how to treat the children and explained what her duties were. (*Id.* at 12:2-13.) Defendant Howard does not remember if she received performance evaluations from Detroit Public Schools. (*Id.* at 8:10-18.)

Defendant Howard stated that she was never investigated while she was with the Detroit Public Schools. (*Id.* at 7:18-20.) She also stated that she never had any reprimands or disciplines. (*Id.* at 9:18-20.) This incident happened on January 31, 2008 and Defendant Howard testified that she voluntarily retired later that year. (*Id.* at 12:14-22.)

## II.     Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing' – that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Revised Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The revised Rule also provides the consequences of failing to

properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

### III. Analysis

#### A. Defendant Detroit Public Schools

Plaintiffs allege that Defendant Detroit Public Schools violated their constitutional rights and brings this action under 42 U.S.C. § 1983. Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for

redress.

42 U.S.C. § 1983. Local governments and agencies, like every other § 1983 "person," may be sued for constitutional deprivations under § 1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell v. Dept. of Soc. Servs. of New York*, 436 U.S. 658, 690-91 (1978).

In order for a municipality to be liable, the local government must, under color of some official policy, "cause" an employee to violate another's constitutional rights. *Id.* at 692. The mere right to control without any control or direction having been exercised and without any failure to supervise is not enough to support liability. *Id.* at 694. Municipalities cannot be found liable under § 1983 under the doctrine of *respondeat superior* for the constitutional torts of their employees. *Id.* at 663.

> A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 694. The local government's policy or custom must be "the moving force" of the constitutional violation in order to establish the liability of a government body. *See Searcy v. City of Dayton,* 38 F.3d 282, 286 (6th Cir. 1994). If the municipality "impliedly or tacitly authorized, approved or encouraged the [misconduct], it promulgated an official policy within the meaning of *Monell*." *Turpin v. Mailet*, 619 F.2d 196, 201 (2d Cir. 1980).

The Sixth Circuit has held that to satisfy the *Monell* requirements, a plaintiff must "identify the policy, connect the policy to the city itself, and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987)).

In this case, Defendants argue that Plaintiffs have no evidence that there was any unlawful policy, practice, or custom that would subject Defendant Detroit Public Schools to liability for Defendant Howard's actions. Plaintiffs argue that Defendant Detroit Public Schools is liable because it; (1) failed to investigate the alleged assault and therefore ratified Defendant Howard's conduct, (2) failed to supervise its employees, and (3) created the danger.

### 1. Failure to Investigate

Plaintiffs argue that Defendant Detroit Public Schools should be held liable under § 1983 because it ratified Defendant Howard's unconstitutional conduct by failing to investigate the January 31, 2008 incident. Plaintiffs cite several cases that hold that a failure to investigate or discipline can amount to a ratification of the employee's conduct and subject the government entity to liability. Those cases, however, are easily distinguishable from the facts in this case. All the cases cited by Plaintiffs noted that the violations were not limited to a single incident and that the government entity should have been on notice that the plaintiffs in those cases would be subject to constitutional violations. *See Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241 (6th Cir. 1989) (holding there had been enough similar incidents to put the sheriff on notice, where there was testimony that at least 14 other inmates were subject to the same treatment).

In *Marchese v. Lucas*, 758 F.2d 181 (6th Cir. 1985), the Sixth Circuit held that the sheriff had ratified the conduct of his employees where a prisoner, who had pointed a gun at an officer during the course of being arrested, had been beaten twice by police officers while in custody. The first incident occurred when officers brought the plaintiff to the sheriff's county jail, where the plaintiff was beaten by officers in the presence of other officers and supervising officers. No one reported this incident, there was no investigation, and no officers were named. The second incident occurred when an officer opened the plaintiff's jail cell in the middle of the night and someone—an officer or another inmate—beat the plaintiff while an officer watched and laughed. Again, no investigation of this incident occurred, no one was named, and no one was disciplined. Three officers also testified that they had never received any training in the care, treatment, and handling of prisoners in their custody. The court held that there was a policy that where a citizen had pointed a gun at an officer, subsequent assault by brother officers would not engender either serious investigation to discover the perpetrators or official sanctions against their conduct. *Id.* at 188.

In this case, unlike *Marchese*, Defendant Howard testified that Defendant DPS gave her training at the beginning of every school year. The only evidence presented to this Court regarding Defendant DPS' investigation of this incident is the testimony of Defendant Howard and Plaintiffs' mother, Diamond Martinez. Martinez testifies that Defendant DPS did not respond to her phone calls regarding the matter. Defendant Howard stated that she had never been investigated in this incident. Defendant's Howard memory or veracity of testimony, however, is questionable because there are handwritten investigation notes that were presented to her at her deposition. Moreover,

9

Martinez testified that Ms. Coleman told her that Defendant Howard would never be on a bus again, Plaintiffs rode the bus the next day and said they never saw Defendant Howard again, and the record does not indicate whether Defendant Howard ever served as a bus attendant after this incident.

Unlike the above cited cases, Defendant Howard had no previous complaints of misconduct on her record, there is no claim of more than one incident, and there is no indication that Defendant DPS should have been on notice that something like this would occur. Even taking the facts in the light most favorable to Plaintiffs, this one incident does not establish a policy or custom of Defendant DPS' failure to investigate and ratification of unconstitutional behavior.

### 2. Failure to Supervise

A municipality can be held liable for failure to supervise its officers. *Doe v. City of Roseville*, 296 F.3d 431, 440 (6th Cir. 2002). A supervisory official's failure to supervise the offending individual is not actionable unless the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. *Shehee v. Luttrell*, 199 F.3d 295 (6th Cir. 1999). At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers. *Id.* It must be shown that the failure to supervise was a deliberate or conscious choice by the municipality. *Id.*

Even if there is no express policy, inadequate supervision alone may be actionable where the subordinate's abuses are so apparent that knowledge can be imputed to the supervisor, and the supervisor's failure to rectify the problem approaches recklessness. *Redmond v. Baxley*, 475 F. Supp 1111, 1116 (E.D. Mich. 1979); *Leite v.*

10

*City of Providence*, 463 F.Supp. 585, 589-590 (D.R.I. 1978).

In this case, the only evidence in the record before this Court is that Defendant Howard does not remember whether she was given performance evaluations. This hardly qualifies as a policy or custom or deliberate indifference on the part of Defendant DPS where there is no evidence of any complaints or incidents prior to the one at issue here. There is no indication that Defendant DPS encouraged, participated, authorized, or approved of Defendant Howard's conduct. Knowledge and recklessness cannot be imputed to Defendant DPS where all the evidence suggests that this was a single occurrence that never happened before and never happened again.

### 3. State Created Danger

A state may be held liable under the Fourteenth Amendment for private acts of violence under the state-created-danger theory. *Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 912-13 (6th Cir. 1995). While the state generally does not have an affirmative duty to protect its citizens from private acts of violence, it may not cause or greatly increase the risk of harm to its citizens without due process of law. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998). A plaintiff alleging a constitutional tort under the state-created-danger theory must to show "special danger" in the absence of a special relationship between the state and either the victim or the private tortfeasor.[3] The victim faces "special danger" where the state's actions place the victim specifically at risk, as distinguished from a risk that affects the public at large. *Id.* The state must

---

[3] No special relationship between Defendant DPS and Plaintiffs exist merely because Plaintiffs were students or riding on a school bus. A special relationship can only arise when a state restrains an individual and the mandatory attendance requirements for school do not qualify as such. *See Sargi*, 70 F.3d at 911.

have known or clearly should have known that its actions specifically endangered an individual. *Id.*

In this case, Plaintiffs argue that Defendant DPS knew or should have known that its failure to evaluate its bus employees would have the inevitable potential of endangering the children in their care. The only evidence in the record, as noted above, however, is that Defendant Howard does not remember if she was given performance evaluations. Even if Defendant DPS had not given Defendant Howard any performance evaluations, this does not establish that Defendant DPS knew or should have known that Defendant Howard was a danger to Plaintiffs.

There is no evidence that Defendant DPS created or increased the risk that Plaintiffs would be exposed to private acts of violence. There is no evidence that Defendant Howard had any previous complaints against her or was involved in any other alleged assaults. There is nothing in the record to suggest that Defendant DPS knew or should have known that its actions specifically endangered Plaintiffs.

Plaintiffs have not established that there was any policy or custom that would subject Defendant DPS to liability for Defendant Howard's actions. Defendants' motion for summary judgment as it relates to Defendant DPS should be GRANTED.

### B.     Defendant Sarah Howard

It is well established that persons have a fourteenth amendment liberty interest in freedom from bodily injury. *Webb v. McCollough,* 828 F.2d 1151, 1158 (6th Cir. 1987).

> The substantive due process inquiry in school corporal punishment cases must be whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking

to the conscience.

*Id.* (holding that a high school principal's actions, in breaking down a student's door, throwing the student against a wall, and slapping the student, were shocking to the conscience). In *Webb*, the court found three factors important in finding a substantive due process claim: (1) the alleged blows were not struck in the school context, where the need for immediate disciplinary control is at its greatest; (2) the principal was *in loco parentis* to the plaintiff during the field trip and had a heightened responsibility for the plaintiff's well being; and (3) the alleged blows were, quite possibly, not disciplinary in nature. *Id.*

In this case, taking the facts in the light most favorable to Plaintiffs, the alleged blows were in the school context. Plaintiffs were riding a school bus, filled with kids who were standing up, misbehaving, and throwing things. Plaintiffs both testify that Defendant Howard came to the back of the bus because the kids were not listening to her and would not sit down or stop throwing things. Plaintiff Jasmine stated that Defendant Howard lost her temper, starting hitting kids, and Plaintiffs "got caught up in the middle of it." Unlike *Webb*, Plaintiffs in this case were not on an over-night field trip away from their parents, but were merely riding the bus home from school. *Webb*'s finding of a heightened responsibility for the plaintiff's well being does not apply.

The third factor in *Webb*, however, is present in this case. The alleged blows here, in looking at the facts in the light most favorable to Plaintiffs, were not disciplinary in nature. While there were other kids on the bus who were standing and throwing things, Plaintiffs testified that Defendant Howard punched, scratched and kicked them despite the fact that they were sitting quietly in their seat. Plaintiffs testified that

Defendant Howard scratched Jasmine's arms hard enough to draw blood and punched her once in the back. Plaintiffs also testified that Defendant Howard punched Joshua six or seven times in the back, scratched his arms, and kicked him in the knee. Plaintiffs went to the hospital where the medical reports that Jasmine had superficial abrasions on her arm and Joshua had pain in his mid-thoracic area and the doctors gave him an x-ray.

Defendant argues that the injuries that Plaintiffs sustained are not serious enough to warrant a constitutional deprivation. In *Webb*, however, the Sixth Circuit overturned the district court's order granting summary judgment for defendants, ruling that the battery was enough that a jury could find that it was a brutal and inhumane abuse of power that literally shocked the conscience. In that case:

> McCullough was quite angry when he realized Webb was in the bathroom. He tried to jimmy the bathroom door lock, but Webb would not let him in. He then slammed the door three or four times with his shoulder. The door finally gave way, knocking Webb against the wall. McCullough then thrust the door open again, and it struck Webb again, throwing her to the floor. He then grabbed Webb from the floor, threw her against the wall, and slapped her. She then broke away and ran to her roommates.

*Webb*, 828 F.2d at 1154. There is no evidence that Webb was seriously injured or went to the hospital, only that she–a high-school student–was hit with the door, thrown against the wall, and slapped. The Sixth Circuit determined that this was enough to overturn summary judgment.

In this case, the Plaintiffs–eight and ten years old and in special education–were sitting quietly when an adult bus attendant punched, kicked, and scratched. A trier of fact could find that under the circumstances, Defendant Howard's need to strike Plaintiffs was so minimal or non-existent that the alleged blows were a brutal and

14

inhumane abuse of power, shocking to the conscience. *See Webb*, 828 F.2d at 1159. Summary judgment under these circumstances is inappropriate. Defendants' motion for summary judgment as it pertains to Defendant Howard, individually, is DENIED.

## IV.     Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in part and DENIED in part. Defendant Detroit Public Schools' motion for summary judgment is granted and it is dismissed as a defendant in this case. Defendant Howard's motion for summary judgment is denied.

                              s/Nancy G. Edmunds
                              Nancy G. Edmunds
                              United States District Judge

Dated:  August 6, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 6, 2012, by electronic and/or ordinary mail.

                              s/Carol A. Hemeyer
                              Case Manager